JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, William Arnett ("Arnett"), appeals his conviction and sentence for assault following a bench trial in the East Cleveland Municipal Court. For the following reasons, we affirm the trial court's decision.
 {¶ 2} On the afternoon of August 14, 2005, Arnett arrived unannounced at the home of Gloria Benson ("Benson") as she sat on her back porch having lunch with Ruby Brooks ("Brooks"), a longtime friend. Arnett and Benson were previously involved romantically, but recently their relationship had become that of just friends. Arnett, decades earlier, had also been romantically involved with Brooks, who was visiting Cleveland from Switzerland, to attend her mother's funeral.
 {¶ 3} Benson questioned Arnett about why he had come to her home unannounced. When Arnett gave a muffled response and proceeded to leave, a verbal exchange ensued, which culminated with Benson sustaining a blow to her mouth. Benson became very upset and picked up a brick to hit Arnett, but was restrained by Brooks. Arnett subsequently left. Benson called the police, and was instructed to come to the station to file a report. This ultimately resulted in assault charges being brought against Arnett.
 {¶ 4} Benson testified that she was widowed after 30 years of marriage. She met Arnett sometime in the year 2000. She stated they dated for almost two years.
 {¶ 5} Benson testified that on August 14, 2005, she was sitting on her enclosed back porch with Brooks, when Arnett pulled into the driveway. Arnett *Page 4 
exited his car, came onto the porch, and sat down. Benson stated: "First, he didn't even speak. Then I asked him, you know, `Well, can't you speak?' And he says, `I did.'
 {¶ 6} And I say, `Well, I didn't hear you.' And then I said, `Why didn't you call before you came to my home?'" (Tr. at 41.)
 {¶ 7} Benson testified that Arnett continued to insist that he had called, but that the telephone line was busy. Benson told Arnett that he should have called before coming to her home and asked him to leave. Benson testified that as Arnett proceeded to leave, he slammed the porch door and called her crazy.
 {¶ 8} Benson testified that as she was following behind Arnett and inquiring why he had slammed the porch door, Arnett turned around, and punched her in the chin. Benson stated that she lunged at Arnett, who then grabbed her by her hair and dragged her around the yard. Benson stated that she furiously picked up a brick to hit Arnett, but was restrained by Brooks. Arnett then got into his car and drove away.
 {¶ 9} Finally, Benson testified that as a result of the altercation, she sustained lacerations to her mouth and lip.
 {¶ 10} For the defense, expert witness, Mary Jean Ostendorf ("Ostendorf"), testified that she is a first response nurse with the Cleveland Municipal School District. Ostendorf testified that the injury Benson allegedly sustained was not caused by the blunt force trauma of a punch. Ostendorf testified that after looking at the photograph of Benson, taken the day following the incident, she opined that *Page 5 
injury resulted from tripping or falling forward. Ostendorf testified an injury resulting from a punch would result in loose teeth, bruises around the jaw, or slap marks.
 {¶ 11} Finally, Arnett testified on his own behalf. Arnett, age 63, testified that he met and began dating Benson while counseling her foster son through the Berea Children's Home. Arnett testified that Benson became very argumentative when he arrived at her home, and accused him of not calling before he came. Consequently, he decided to leave.
 {¶ 12} Arnett testified that as he stood up to leave, Benson approached him, full of rage, and holding a beer glass in her hand. Arnett stated that as he walked through the door, it slammed. After taking two or three steps, he heard the porch door open and the following events unfolded:
 "I looked around and Mrs. Benson was flying after me, and when it got to this point when I saw her flying after me, I'd gotten here and I turned around. And when I turned around she slapped my face, pow, she started flailing away. I put my hand on her forehead to stop her from hitting me again and she hollered, `Call the police, he hit me.' Then I went this way and Mrs. Benson went this way, looking on the ground for a weapon. At that point Ruby came out and grabbed her around the waist and wouldn't let her go. And I said, `Hold her. Will you hold her so I can get out of here?' And I went and got in my car and left. I had never seen anybody that angry at me, and I didn't know why." (Tr. at 93-94.)
 {¶ 13} The trial court found Arnett guilty of assault and sentenced him to one year of community control. Arnett filed a motion for stay of execution of sentence pending a direct appeal to this Court, which the trial court granted. Arnett now appeals and raises two assignments of error for our review. *Page 6 
 {¶ 14} "I. The verdict finding the appellant guilty was against the manifest weight of the evidence and is contrary to law."
 {¶ 15} In the first assignment of error, Arnett argues that his conviction for assault is against the manifest weight of the evidence.
 {¶ 16} When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 17} In the instant case, Arnett was convicted of assault. The offense of assault is defined by R.C. 2903.13, which provides in pertinent part that "no person shall knowingly cause or attempt to cause physical harm to another." Physical harm occurs when there is "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).
 {¶ 18} Here, the record at trial established that Benson suffered physical harm following a heated exchange with Arnett. A photo taken the day following the incident depicts Benson with a swollen lower lip. Benson claimed that Arnett punched her, while Arnett claimed that Benson slapped him, and he put his hand on her forehead to prevent her from hitting him again. Unfortunately, Brooks, the sole *Page 7 
eyewitness, had returned to Switzerland by the time the trial commenced. However, both Benson and Arnett testified that Brooks was restraining Benson from using a brick or other weapon against him.
 {¶ 19} Consequently, the issue before us becomes a matter of credibility. Under State v. DeHass (1987), 10 Ohio St.2d 230, the trier of fact was free to accept or reject any or all of the testimony of the witnesses and assess the credibility of those witnesses. Accordingly, whether Benson's testimony was credible or not was for the trier of fact to determine. Id.
 {¶ 20} We find that a rational trier of fact could believe that Arnett did not hit Benson, that Arnett merely put his hand on Benson's forehead to keep her from slapping him again, and that Benson was lying. However, a rational trier of fact could also reasonably find that Arnett did physically harm Benson, especially in light of the fact that Benson testified that she became so angry that she picked up a brick to hit Arnett, and had to be restrained by Brooks. Arnett also testified that he had never seen someone so angry at him, and that Brooks had to restrain Benson.
 {¶ 21} Upon careful review of the testimony and evidence presented at trial, we hold that the trial court did not act contrary to the manifest weight of the evidence in finding Arnett guilty of assault. Substantial, competent, credible evidence supports the court's verdict.
 {¶ 22} Assignment of Error I is overruled. *Page 8 
 {¶ 23} "II. The trial court erred in denying the appellant's motion for a new trial on the basis that appellant's prior counsel was ineffective by failing to request a jury trial pursuant to Rule 32, Ohio Rules of Criminal Procedure."
 {¶ 24} In the second assignment of error, Arnett argues that the trial court erred in denying his motion for a new trial. Arnett specifically claims he was denied the effective assistance of counsel, because trial counsel failed to request a jury trial.
 {¶ 25} In order for this Court to reverse a conviction on the grounds of ineffective assistance of counsel, we must find that (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus.
 {¶ 26} Here, the record indicates that after he was found guilty, Arnett filed a motion for a new trial on the grounds that his prior counsel failed to request a jury trial. On May 3, 2006, after a hearing on the motion, the magistrate recommended that Arnett's motion be denied. On June 13, 2006, the trial court adopted the *Page 9 
magistrate's decision. For the reasons that follow, we agree with the trial court's decision.
 {¶ 27} The record indicates that at the hearing on the motion for a new trial, Arnett's defense counsel testified that she met with him for more than an hour and discussed the pros and cons of a jury trial versus a bench trial. Arnett's defense counsel testified that at the conclusion of the meeting, she recommended a jury trial. His defense counsel testified that despite her recommendation, Arnett opted for a bench trial and expressed his fear of having all women on the jury.
 {¶ 28} The record also indicates that in the proceedings below, the matter was significantly pre-tried and set for trial on several different occasions. However, patently absent in the record is any evidence that Arnett ever indicated his defense counsel was not complying with his request for a jury trial. Arnett only raised the issue after the trial court found him guilty.
 {¶ 29} Finally, the record indicates that Arnett was 63, held a master's degree in social work, and had attended one year of law school. Consequently, it is reasonable for the trier of fact to have concluded that Arnett knew he had a right to a jury trial, that his defense counsel discussed the pros and con of a jury trial versus a bench trial, and that Arnett chose to have a bench trial.
 {¶ 30} Upon careful review of the record, including the testimony at the hearing on the motion for a new trial, we conclude that Arnett's defense counsel was not ineffective, and as such, the trial court properly denied the motion for a new trial. *Page 10 
 {¶ 31} Assignment of Error II is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the East Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, J., CONCURS COLLEEN CONWAY COONEY, J., CONCURS IN JUDGMENT ONLY. *Page 1